E. L. HAMILL, *et al.*

*v.*

C. H. KOONTZ, *Tax Commissioner, etc.*

(CC 766)

Submitted April 18, 1950. Decided May 31, 1950.

LOVINS, JUDGE, not participating.

No appearance for plaintiffs.

*Burns Stanley* and *Edwin McClelland,* for defendant.

HAYMOND, JUDGE:

This proceeding by notice of motion for judgment was

instituted in the Circuit Court of Cabell County by the plaintiffs, E. L. Hamill and nineteen other persons doing business as Hamill Coal Sales Company, to recover from the defendant, C. H. Koontz, Tax Commissioner of the State of West Virginia, allegedly erroneous payments of taxes for the years 1944 and 1945 of the respective amounts of $256.01 and $481.21, which, with interest, aggregate the sum of $916.84. The circuit court sustained the demurrer of the defendants to the notice of motion for judgment of the plaintiffs and, on its own motion, certified its ruling to this Court.

The questions presented by the certificate of the circuit court are: (1) Whether a proceeding by notice of motion for judgment against C. H. Koontz, Tax Commissioner of the State of West Virginia, under Chapter 33, Section 8, Acts of the Legislature, 1933, First Extraordinary Session, incorporated in Michie's Annotated Code, 1949, as 11-13-8, to recover overpayments of business and occupation taxes, is violative of Article VI, Section 35, of the Constitution of West Virginia; and (2) whether other action of the plaintiffs to obtain a refund of such taxes is barred by their failure to invoke the remedy provided by Chapter 129, Article 1, Section 2a, Acts of the Legislature, 1939, Regular Session, incorporated in Michie's Annotated Code, 1949, as 11-1-2a.

The pertinent provisions of the statute upon which the plaintiffs base their right to maintain this proceeding, Chapter 33, Section 8, Acts of the Legislature, 1933, First Extraordinary Session, Michie's Annotated Code, 1949, 11-13-8, are couched in this language: "Any person improperly charged with any tax and required to pay the same may recover the amount paid, together with interest, in any proper action or suit against the tax commissioner, and the circuit court of the county in which the taxpayer resides or is located shall have original jurisdiction of any action to recover any tax improperly collected. It shall not be necessary for the taxpayer to protest against the payment of the tax or to make any demand to have the same refunded in order to maintain such suit. In any suit

to recover taxes paid or to collect taxes, the court shall adjudge costs to such extent and in such manner as may be deemed equitable. Upon presentation of a certified copy of a judgment so obtained, the auditor shall issue his warrant upon any funds in the treasury available for the payment thereof."

The plaintiffs contend that they have the right to maintain this proceeding by virtue of the express provisions of the statute; and that it is against the defendant individually and not in his official capacity; and that it is not within the ban of Article VI, Section 35, of the Constitution of this State which provides that the State of West Virginia shall never be made defendant in any court of law or equity, except in a garnishment or attachment proceeding as garnishee or suggestee. On the contrary, the defendant asserts that the proceeding is against him in his official capacity; that it is not within the terms of or authorized by the statute; and that it is in reality a suit against the State and, as such, is proscribed by Article VI, Section 35, of the Constitution of this State.

The controlling question is whether this proceeding against the defendant under the designation of Tax Commissioner of the State of West Virginia is, in reality, a proceeding against the State of West Virginia within the inhibition of the foregoing constitutional provision.

The office of tax commissioner was created by the Legislature by Chapter 4, Acts of the Legislature, 1904, Regular Session, and broad powers and duties were conferred and imposed upon the tax commissioner by that statute and by subsequent legislative enactments. See *State ex rel. Dillon* v. *Graybeal,* 60 W. Va. 357, 55 S. E. 398. By Code, 1931, 11-1-2, as amended, the tax commissioner is required "to see that the laws concerning the assessment and collection of all taxes and levies, whether of the State or of any county, district or municipal corporation thereof, are faithfully enforced." Numerous specific powers are given the tax commissioner by particular statutes which need not be enumerated or referred to but

among which may be mentioned the collection of business and occupation taxes, under Article 13, Chapter 11, Code, 1931, as amended, gasoline taxes, under Article 14, Chapter 11, Code, 1931, as amended, and consumers sales and service taxes, under Chapter 108, Acts of the Legislature, 1937, Regular Session, as amended, which last mentioned statute is now incorporated in Michie's Annotated Code, 1949, as Article 15, Chapter 11. The Legislature has established a system of taxation and, as part of the system so established, has imposed upon the tax commissioner the duty of supervising its operation and of giving aid and assistance, in an advisory capacity, to the board of public works, and has given that officer ample authority to perform his supervisory and advisory functions. See *Ohio Fuel Oil Company* v. *Price,* 77 W. Va. 207, 87 S. E. 202. The legislation creating the office of tax commissioner is constitutional and the tax commissioner is an executive officer of the State. *Blue, State Tax Commissioner* v. *Tetrick,* 69 W. Va. 742, 72 S. E. 1033; *Blue, State Tax Commissioner* v. *Smith,* 69 W. Va. 761, 72 S. E. 1038. As a public state officer, the tax commissioner, in the performance of the duties imposed upon him by law, is engaged in a governmental function and exercises the sovereign power of the State.

The quoted portion of the statute on which this proceeding is based provides that upon presentation of a certified copy of the judgment obtained in any suit against the tax commissioner to recover taxes paid, the auditor shall issue his warrant upon any funds in the treasury available for the payment of the judgment. The purpose of any action or suit, under the applicable provision of the statute, is to recover, upon a judgment against the tax commissioner, funds of the State as a refund of taxes improperly paid by the taxpayer who seeks to obtain such refund. The taxes paid by the plaintiffs to the tax commissioner, as required by Chapter 33, Section 11, Acts of the Legislature, 1933, First Extraordinary Session, Michie's Annotated Code, 1949, 11-13-11, when received by him, were in the custody of the State and became its

funds and property, even though the payments were in excess of the amount that may have been actually due and owing by the plaintiffs, and any refund of the excess would necessarily be made from the public moneys of the State.

This Court has held in several cases that proceedings against boards and commissions, created by the Legislature, as agencies of the State, are suits against the State within the meaning of Article VI, Section 35, of the Constitution of West Virginia, even though the State is not named as a party in such proceedings. An action against the State Road Commission to recover damages to private property caused by the construction of a public road is a suit against the State and can not be maintained. *Mahone* v. *State Road Commission of West Virginia,* 99 W. Va. 397, 129 S. E. 320. A proceeding in mandamus against the State Road Commission to compel the payment of a judgment obtained against it for compensation for land appropriated for road purposes without purchase or condemnation is within the constitutional provision which forbids a suit against the State. *Stewart* v. *State Road Commission of West Virginia,* 117 W. Va. 352, 185 S. E. 567. An action of assumpsit against the State Road Commission, for breach of contract, is a suit against the State in violation of the same constitutional provision and is not maintainable. *Watts* v. *State Road Commission of West Virginia,* 117 W. Va. 398, 185 S. E. 570. Proceedings against the West Virginia Liquor Control Commission, Spencer State Hospital, the State Board of Control, and the State Board of Agriculture, a formerly existing department or agency of the State, have been held by this Court to be suits against the State and as such are prohibited by Article VI, Section 35, of the Constitution of this State. *Schippa* v. *West Virginia Liquor Control Commission,* 132 W. Va. 51, 53 S. E. 2d 609, 9 A. L. R. 2d 1284; *Barber, Adm'x.* v. *Spencer State Hospital,* 95 W. Va. 463, 121 S. E. 497; *State ex rel. Gordon* v. *State Board of Control,* 85 W. Va. 739, 102 S. E. 688; *The Miller Supply Company* v. *State Board of Control,* 72 W. Va. 524, 78 S. E.

672; *Miller* v. *State Board of Agriculture,* 46 W. Va. 192, 32 S. E. 1007, 76 Am. St. Rep. 811.

A suit against an officer of the State who acts or threatens to act under an unconstitutional statute, with the enforcement of which he is charged, is a suit against him in his individual capacity, as for a wrong done by him, and not against the State; but if a suit directly involves a contract right or liability on the part of the State government or property belonging to it or in its custody it is deemed to be a suit against the State. See *Coal and Coke Railway Company* v. *Conley and Avis,* 67 W. Va. 129, 67 S. E. 613. In *The Miller Supply Company* v. *State Board of Control,* 72 W. Va. 524, 78 S. E. 672, this Court held: "The State Board of Control is a direct governmental agency of the state; an action on a contract made by that board in the line of its state agency is in reality and substance a suit against the state itself and cannot be maintained." The opinion in that case contains this language: "The State Board of Control is a direct governmental agency of the state. True, the statute creating that board made it a corporation. But still as such corporation it is only a state governmental agency. When it acts, it acts for the state in the administration of state affairs. Its contracts are the contracts of the state. Further true, the statute says it may sue and be sued. It may be that by appropriate process some mere ministerial duty of the board may be controlled. This we do not decide, for the question is not now before us. Certain it is, no contract or property right of the state can be brought into litigation in the courts by a suit against that board. The state has a direct, immediate, and total interest in every valid contract made by the State Board of Control, and in truth and in substance any suit on a contract with that board is a suit against the state. Principles recognized and discussed in *Miller* v. *State Board of Agriculture,* 46 W. Va. 192, are controlling here. They need not be repeated. It is said that the board involved in that case was not a corporation. That fact makes no distinction. It was a state agency, though not incorporated. Principles applicable to an unincorporated

state agency, in relation to whether a suit against it is in substance one against the state, are as clearly applicable to a corporate agency of the state. The same test applies. That test is: Is the matter involved the state's matter?

"In *Railway Co.* v. *Conley*, 67 W. Va. 129, this court held that the particular suit against a state officer could not be considered one against the state itself. But in that decision the principle we now apply was plainly recognized. It was distinctly made to appear, by way of exception, that whenever a suit against an officer or agency of the state involves a contract right or liability on the part of the state government, or property belonging to it, the suit is in reality one against the state itself." The opinion also quotes with approval a passage from 36 Cyc. 915, a pertinent portion of which is in these words: "Suits against officers of a state as representing the state in action and liability, and in which the state, although not a party to the record, is the real party against which relief is sought and in which a judgment for plaintiff, although nominally against defendant as an individual, could operate to control the action of the state or subject it to liability, are suits against the state." In *Butler* v. *Printing Commissioners*, 68 W. Va. 493, 70 S. E. 119, 38 L. R. A. (N. S.) 653, a proceeding in mandamus to compel the Commissioners of Public Printing, composed of the State Auditor, the State Treasurer, and the State Superintendent of Schools, to award the relator a contract for public binding, this Court, though not deciding the question whether such proceeding was a suit against the State, said: "The question is made by counsel whether an additional reason against awarding the writ is not found in the claim that the suit is against the State and therefore prohibited by the Constitution. We do not decide this point. It may be said no liability is sought to be imposed upon the state, nor is her property affected; yet her officers are sued only because they are such, and having no personal interest, and the law is that the prohibition of suits against the state cannot be evaded by circuitous action in making the officers parties. This suit is to establish a contract imposing liability on the

state, which it would recognize, though no suit could be brought on that contract. A *mandamus* for relief in such a case as this was held a suit against the state in *Mills Pub. Co.* v. *Larrabee,* 78 Iowa 97. See *Miller* v. *Board,* 46 W. Va. 192."

In 49 Am. Jur., States, Territories and Dependencies, Section 92, the subject of suits against the State is discussed in this language:

"While a suit against state officials is not necessarily a suit against the state, within the rule of immunity of the state from suit without its consent, that rule cannot be evaded by bringing an action nominally against a state officer or a state board, commission, or department in his or its official capacity when the real claim is against the state itself, and the state is the party vitally interested. If the rights of the state would be directly and adversely affected by the judgment or decree sought, the state is a necessary party defendant, and if it cannot be made a party, that is, if it has not consented to be sued, the suit is not maintainable. The state's immunity from suit without its consent is absolute and unqualified, and a constitutional provision securing it is not to be so construed as to place the state within the reach of the process of the court.

"While formerly, in determining whether a state was a party to a controversy, the court would look only to the record to see who were parties, that is, the court would not consider the state a party unless nominally so, this view has long since been discarded. The rule is now well settled that a suit against an officer of a state as representing the state in action and liability, where the state, although not a party to the record, is the real party against which relief is sought, and where a judgment for the plaintiff, although nominally against the officer as an individual, could operate to control the action of the state or subject it to liability, is to be deemed a suit against the state, and is not maintainable unless the state has consented to be sued." See also 59 C. J., States, Section

464, pages 307 to 309. The words "without its consent", and their equivalents, in the above cited authorities, are of no importance, for in this jurisdiction no agency, representative, or department of the State can consent that it be sued or waive its constitutional immunity from suit. Within the rule which prohibits a suit against the State "are suits wherein a state officer or agency is, or will be, required to use state property or funds in order to afford the relief demanded; suits against officers or agents with reference to, or for the purpose of enforcing through the agent, contracts which are those of the state alone; suits to compel officers or agents to do acts which will impose contractual liability on the state; and suits to enjoin officers from doing official acts, which are the acts of, or at least for the direct benefit of, the state." 59 C. J., States, Section 464, pages 308 and 309.

The tax commissioner, in receiving the taxes paid to him by the plaintiffs, including the erroneous excess beyond the amounts due and owing by them, was engaged in the discharge of a governmental function in behalf of the State, and in so doing was exercising the powers conferred, and discharging the duties imposed, upon him in his official capacity as the representative of the State. The judgment which the plaintiffs seek to recover in this proceeding, if satisfied, would be paid from funds in the treasury of the State. The interest of the State is directly affected and involved with respect to funds belonging to it and in its custody. In consequence this proceeding is in reality a suit against the State and, being within the prohibition of the constitutional provision, can not be maintained. In attempting to authorize a suit against the tax commissioner to recover any tax improperly collected, the Legislature exceeded its constitutional power and the statute, Chapter 33, Section 8, Acts of the Legislature, 1933, First Extraordinary Session, Michie's Annotated Code, 1949, 11-13-8, to the extent that it undertakes to authorize such suit, is invalid as violative of Article VI, Section 35, of the Constitution of this State.

In view of the conclusion reached upon the decisive

448

question in this case, it is unnecessary to answer or consider the other question certified by the trial court.

The ruling of the Circuit Court of Cabell County, sustaining the demurrer, is affirmed.

*Ruling affirmed.*