IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2017 Term

No. 16-0325

FILED
March 7, 2017
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WEST VIRGINIA DEPARTMENT OF TRANSPORTATION,
DIVISION OF HIGHWAYS,
Petitioner Below, Petitioner

v.

MARGARET Z. NEWTON,
Respondent Below, Respondent

Appeal from the Circuit Court of Hardy County
Honorable Andrew N. Frye, Jr., Judge
Civil Action No. 11-C-30

AFFIRMED, IN PART; REVERSED, IN PART; AND REMANDED

Submitted: January 17, 2017
Filed: March 7, 2017

Scott L. Summers, Esq.                     J. David Judy, III, Esq.
Summers Law Office, PLLC                   Judy & Judy
Charleston, West Virginia                  Moorefield, West Virginia
Attorney for Petitioner                    Attorney for Respondent

CHIEF JUSTICE LOUGHRY delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      ""'"[T]he trial [court] . . . is vested with a wide discretion in determining the amount of . . . court costs and counsel fees, and the trial [court's] . . . determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that [it] has abused [its] discretion." Syllabus point 3, [in part,] *Bond v. Bond*, 144 W.Va. 478, 109 S.E.2d 16 (1959). Syl. Pt. 2, [in part,] *Cummings v. Cummings*, 170 W.Va. 712, 296 S.E.2d 542 (1982) [(per curiam)]. Syllabus point 4, in part, *Ball v. Wills*, 190 W.Va. 517, 438 S.E.2d 860 (1993). Syl. pt. [2], *Daily Gazette Co., Inc. v. West Virginia Dev. Office,* 206 W.Va. 51, 521 S.E.2d 543 (1999). Syllabus point 1, *Hollen v. Hathaway Electric, Inc.*, 213 W.Va. 667, 584 S.E.2d 523 (2003) (per curiam).' Syl. Pt. 3, *Shafer v. Kings Tire Serv., Inc.*, 215 W.Va. 169, 597 S.E.2d 302 (2004)." Syl. Pt. 3, *Carper v. Watson*, 226 W.Va. 50, 697 S.E.2d 86 (2010).

2.      "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

3.      "As a general rule each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for

i

reimbursement." Syl. Pt. 2, *Sally-Mike Properties v. Yocum*, 179 W.Va. 48, 365 S.E.2d 246 (1986).

4.     "'If a highway construction or improvement project results in probable damage to private property without an actual taking thereof and the owners in good faith claim damages, the West Virginia Commissioner of Highways has a statutory duty to institute proceedings in eminent domain within a reasonable time after completion of the work to ascertain the amount of damages, if any, and, if he fails to do so, after reasonable time, mandamus will lie to require the institution of such proceedings.' Syllabus point 1, *State ex rel. Rhodes v. West Virginia Department of Highways*, 155 W.Va. 735, 187 S.E.2d 218 (1972)." Syl. Pt. 2, *Shaffer v. West Virginia Dep't of Transp., Div. of Highways*, 208 W.Va. 673, 542 S.E.2d 836 (2000).

5.     "Pursuant to the provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies for Federal and Federally Assisted Programs Property Acquisition Act, 42 U.S.C. §§ 4601– 4655 (2000), the event triggering the award of attorneys' fees in a proceeding involving inverse condemnation, as set forth in Title 49, Section 24.107 of the Code of Federal Regulations, is when '[t]he court having jurisdiction renders a judgment in favor of the owner.'" Syl. Pt. 5, *West Virginia Dep't of Transp. v. Dodson Mobile Home Sales and Serv., Inc.,* 218 W.Va. 121, 624 S.E.2d 468 (2005).

6.  "Costs and attorney's fees may be awarded in mandamus proceedings involving public officials because citizens should not have to resort to lawsuits to force government officials to perform their legally prescribed nondiscretionary duties."  Syl. Pt. 1, *State ex rel. West Virginia Highlands Conservancy, Inc. v. West Virginia Div. of Envtl. Prot.*, 193 W.Va. 650, 458 S.E.2d 88 (1995).

7.  "Where a public official has deliberately and knowingly refused to exercise a clear legal duty, a presumption exists in favor of an award of attorney's fees; unless extraordinary circumstances indicate an award would be inappropriate, attorney's fees will be allowed."  Syl. Pt. 3, *State ex rel. West Virginia Highlands Conservancy, Inc. v. West Virginia Div. of Envtl. Prot.*, 193 W.Va. 650, 458 S.E.2d 88 (1995).

8.  "Where the State of West Virginia, or any entity with statutory authority to take property for public use, undertakes to acquire the fee simple title to a parcel of land all persons who own an interest or an estate in such parcel must be joined as party defendants in the proceeding."  Syl. Pt. 1, *State by Dep't of Nat. Resources v. Cooper*, 152 W.Va. 309, 162 S.E.2d 281 (1968).

9.  "There is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees as 'costs,' without express statutory authorization, when the losing

party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." Syl. Pt. 3, *Sally-Mike Properties v. Yocum*, 179 W.Va, 48, 365 S.E.2d 246 (1986).

10.     "Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Syl. Pt. 4, *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986).

LOUGHRY, Chief Justice:

This case is before this Court for a second time. In *West Virginia Department of Transportation, Division of Highways v. Newton*, 235 W.Va. 267, 773 S.E.2d 371 (2015) ("*Newton I*"), this Court affirmed a judgment order of the Circuit Court of Hardy County that awarded the respondent, Margaret Z. Newton, $941,304.53 as just compensation for the removal of limestone from a certain parcel of land during the construction of a portion of the Corridor H highway. In this appeal, the petitioner, the West Virginia Department of Transportation, Division of Highways (hereinafter "DOH"), seeks reversal of a subsequent final order of the Circuit Court of Hardy County entered on March 2, 2016, awarding Ms. Newton her attorney's fees and expenses arising out of the underlying mandamus and condemnation proceedings. The DOH argues there was no basis to award Ms. Newton her attorney's fees and expenses. Alternatively, the DOH contends that the final order must be reversed because the circuit court failed to make factual findings concerning the reasonableness of the amount of attorney's fees and expenses awarded. Ms. Newton asserts a cross-assignment of error,[1] claiming the circuit court erred by not awarding her attorney's fees and expenses in an amount consistent with the contingency fee contract she has with her attorney.

---

[1]*See* W.Va. R. App. P. 10(f).

Having carefully considered the parties' briefs and arguments, the submitted appendix record, and pertinent authorities, we find that an award of attorney's fees and expenses is warranted but reject Ms. Newton's argument that the award should be based upon the contingency fee contract she has with her attorney. Because the final order is devoid of factual findings regarding the reasonableness of the amount of the attorney's fees and expenses awarded, we reverse and remand this case to the circuit court for an additional hearing on that issue consistent with this opinion.

## I. Factual and Procedural Background

In May 2010, Ms. Newton filed a petition for a writ of mandamus in the Circuit Court of Hardy County seeking to force the DOH to institute a condemnation proceeding for the limestone it excavated from a certain parcel of land located in Hardy County during its construction of a portion of the Corridor H highway. Ms. Newton and her husband[2] sold the subject property, consisting of thirty-seven acres, to James S. Parsons in 1980. However, the deed of conveyance included a reservation of minerals rights for Ms. Newton. In 2004, the DOH acquired a right-of-way from Mr. Parsons to 6.7 acres of the property in exchange for payment of $33,500.00. Although the DOH was informed by its appraiser of the mineral rights reservation, the DOH never contacted Ms. Newton. The DOH proceeded to remove

---

[2]Ms. Newton's husband was deceased by the time the underlying proceedings commenced and, therefore, no further reference will be made to him in this opinion.

approximately 236,187 tons of limestone from the property, utilizing a large portion of it in the construction of the Corridor H highway. *Newton I*, 235 W.Va. at 270, 773 S.E.2d at 374.

Ms. Newton claimed in her petition for a writ of mandamus that as the owner of the minerals she was entitled to just compensation from the DOH for the limestone removed from the property. In March 2011, the mandamus proceeding was resolved through an agreed order whereby the DOH was required to institute a condemnation proceeding against Ms. Newton's mineral interest. The case eventually proceeded to a jury trial.[3] Based upon the jury's factual findings, the circuit court entered the April 16, 2014, judgment order. After this Court affirmed the judgment order in *Newton I*, Ms. Newton renewed her motion for attorney's fees and expenses, which had remained pending in the circuit court during the appeal.

---

[3]At trial, the DOH stipulated that Ms. Newton conveyed only the surface of the subject property to Mr. Parsons; that she reserved fee simple ownership of all minerals underlying the subject property without any limitations or restrictions; and that the reservation was free of ambiguity and clear in its intent. In addition, the DOH stipulated that the minerals reserved by Ms. Newton "include limestone and gravel as defined by the Court." *Newton I*, 235 W.Va. at 278-79, 773 S.E.2d at 382-83. In *Newton I*, the DOH argued that limestone was not a mineral and, therefore, Ms. Newton did not sustain any compensable damages to a viable property right. Noting that the DOH's contention was inconsistent with its stipulation that the minerals reserved by Ms. Newton included the limestone, we did not consider the matter because the DOH failed to raise the issue before the circuit court. *Id.* at 273-274, 773 S.E.2d at 377-78.

Upon consideration of the matter, the circuit court determined that Ms. Newton was entitled to attorney's fees and expenses for both the mandamus proceeding and the condemnation proceeding, as she had requested. Accordingly, the circuit court entered the final order on March 2, 2016, awarding Ms. Newton attorney's fees and expenses in the amount of $32,510.05 for the mandamus proceeding and $228,917.44 for attorney's fees and expenses incurred in the condemnation proceeding. This appeal followed.

## II.  Standard of Review

"The decision to award or not to award attorney's fees rests in the sound discretion of the circuit court, and the exercise of that discretion will not be disturbed on appeal except in cases of abuse." *Beto v. Stewart*, 213 W.Va. 355, 359, 582 S.E.2d 802, 806 (2003); *see also Sanson v. Brandywine Homes, Inc.*, 215 W.Va. 307, 310, 599 S.E.2d 730, 733 (2004) ("We . . .  apply the abuse of discretion standard of review to an award of attorney's fees."). Likewise, ""'"the trial [court] . . . is vested with a wide discretion in determining the amount of . . . court costs and counsel fees, and the trial [court's] . . . determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that [it] has abused [its] discretion." Syllabus point 3, [in part,] *Bond v. Bond*, 144 W.Va. 478, 109 S.E.2d 16 (1959). Syl. Pt. 2, [in part,] *Cummings v. Cummings*, 170 W.Va. 712, 296 S.E.2d 542 (1982) [(per curiam)]. Syllabus point 4, in part, *Ball v. Wills*, 190 W.Va. 517, 438 S.E.2d 860 (1993). Syl. pt.  [2], *Daily Gazette Co., Inc. v. West Virginia*

4

*Dev. Office,* 206 W.Va. 51, 521 S.E.2d 543 (1999). Syllabus point 1, *Hollen v. Hathaway Electric, Inc.*, 213 W.Va. 667, 584 S.E.2d 523 (2003) (per curiam).' Syl. Pt. 3, *Shafer v. Kings Tire Serv., Inc.*, 215 W.Va. 169, 597 S.E.2d 302 (2004)." Syl. Pt. 3, *Carper v. Watson*, 226 W.Va. 50, 697 S.E.2d 86 (2010). Nonetheless, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). With these standards in mind, we address the parties' arguments.

### III. Discussion

The DOH first contends there was no basis to award Ms. Newton her attorney's fees and expenses for either the mandamus or condemnation proceeding. "As a general rule each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for reimbursement." Syl. Pt. 2, *Sally-Mike Properties v. Yocum*, 179 W.Va, 48, 365 S.E.2d 246 (1986). In *West Virginia Department of Transportation v. Dodson Mobile Home Sales and Services, Inc.,* 218 W.Va. 121, 624 S.E.2d 468 (2005), this Court recognized that the Uniform Relocation Assistance and Real Property Acquisition Policies for Federal and Federally Assisted Programs Act (hereinafter "Property Acquisition Act" or "Act"), 42 United States Code §§ 4601 to 4655 (2000), authorizes an award of attorney's fees and other expenses in certain eminent domain actions. As we explained:

The Property Acquisition Act applies to federal and federally assisted road construction projects. As a condition of receiving federal assistance for a project resulting in the acquisition of real property, a State agency must agree to comply with the terms of the Act. *See* 42 U.S.C. § 4655; W.Va. Code §§ 54-3-1 to -5 (Repl.Vol.2000) (implementing the federal Act). The general purpose of the federal Act is "to encourage and expedite the acquisition of real property by agreements with owners, to avoid litigation and relieve congestion in the courts, to assure consistent treatment for owners in the many Federal programs, and to promote public confidence in Federal land acquisition practices. . . . " 42 U.S.C. § 4651.

*Dodson*, 218 W.Va. at 124-25, 624 S.E.2d at 471-72. To effectuate its purpose, the Act requires agencies to comply with certain specified policies. *Id.* at 125, 624 S.E.2d at 472. Of import in this case is the policy embodied in 42 U.S.C. § 4651(8) (2012), which provides:

If any interest in real property is to be acquired by exercise of the power of eminent domain, the head of the Federal agency concerned shall institute formal condemnation proceedings. No Federal agency head shall intentionally make it necessary for an owner to institute legal proceedings to prove the fact of the taking of his real property.

"To carry out the federal mandate, the Legislature enacted W.Va. Code, 54-3-3 [1972] which makes the federal real property acquisition policies applicable to state agencies[.]" *Huntington Urban Renewal Auth. v. Commercial Adjunct Co.,* 161 W.Va. 360, 367, 242 S.E.2d 562, 566 (1978).

The Act provides for an award of specific litigation expenses when the property owner has to initiate a claim to obtain just compensation for the owner's property that the

6

State has taken for a public purpose. 42 U.S.C. § 4654. The implementing regulation provides, in pertinent part:

> The owner of the real property shall be reimbursed for any reasonable expenses, including reasonable attorney, appraisal, and engineering fees, which the owner actually incurred because of a condemnation proceeding, if:
>
> . . . .
>
> (c) The court having jurisdiction renders a judgment in favor of the owner in an inverse condemnation proceeding or the Agency effects a settlement of such proceeding.

49 C.F.R. § 24.107 (2015).[4]

As we have explained:

> [A] landowner's action to recover just compensation for a taking by physical intrusion has come to be referred to as "inverse" or "reverse" condemnation [whereas a] "condemnation" proceeding is commonly understood to be an action brought by a condemning authority such as the Government in the exercise of its power of eminent domain.

*Dodson*, 218 W.Va. at 123 n.2, 624 S.E.2d at 470 n.2 (quoting *U.S. v. Clarke*, 445 U.S. 253, 255 (1980)). While the DOH acknowledges the Corridor H highway construction project is subject to the Act, it argues that the underlying proceeding was a "traditional condemnation

---

[4]The Act and implementing regulation also provide for an award of litigation expenses when "the final judgment of the court is that the Agency cannot acquire the real property by condemnation" or "the condemnation proceeding is abandoned by the Agency other than under an agreed-upon settlement." 42 U.S.C.§ 4654; 49 C.F.R. § 24.107. These provisions are not applicable in this case.

action" and, therefore, Ms. Newton is not entitled to recover her litigation costs. Maintaining that the condemnation action was filed in a timely manner, the DOH asserts that "the inquiry into whether Ms. Newton is entitled to associated litigation costs should end with a simple review of the caption of this case," which reads "*West Virginia Department of Highways v. Newton.*" In other words, the DOH contends that because it ultimately filed the eminent domain proceeding, there was no inverse condemnation. We disagree.

It is clear from the record in this case that the DOH did not intend to institute eminent domain proceedings against Ms. Newton's mineral interest. The DOH obtained a right-of-way from Mr. Parsons in 2004, and it constructed the highway through the subject property during the period of 2006 to 2009. *Newton I*, 235 W.Va. at 270, 773 S.E.2d at 374. Although the DOH was aware that the limestone it was removing from the property for use in constructing the road belonged to Ms. Newton,[5] no effort was made to contact her. Upon learning of the removal of the limestone from the property, Ms. Newton's only recourse was to file a petition for a writ of mandamus. As this Court explained long ago,

> The Constitution of this State Article VI, Section 35, provides "The State of West Virginia shall never be made defendant in any court of law or equity, * * *." That provision is without exception or qualification and is applicable to the State Road Commission of West Virginia as a governmental agency of the State. *Stewart v. State Road Commission*, 117 W.Va. 352, 185 S.E. 567 [1936]; *Mahone v. State Road*

---

[5]*See supra* note 3.

8

*Commission*, 99 W.Va. 397, 129 S.E. 320 [1925]. *See Watts v. State Road Commission*, 117 W.Va. 398, 185 S.E. 570 [1936].

In so applying Article VI, Section 35, of our Constitution, it became apparent that such application of the constitutional provision might conflict with other provisions of the constitution relative to the taking of private property for public use. Accordingly, this Court held in *Hardy v. Simpson*, 118 W.Va. 440, 190 S.E. 680 [1937], that mandamus would lie to require the State Road Commissioner to institute proper condemnation proceedings upon the lapse of a reasonable time after the completion of the work of constructing a public highway.

*Taylor v. Baltimore & Ohio Railroad Co.*, 138 W.Va. 313, 318-19, 75 S.E.2d 858, 861 (1953). In other words,

the proper [and only] course of action for an aggrieved property owner who believes his or her property has sustained damage as a result of highway construction or improvement by the DOH, after a reasonable time without appropriate action by the DOH, is to file a complaint in the circuit court seeking a writ of mandamus.

*Shaffer v. West Virginia Dep't of Transp., Div. of Highways*, 208 W.Va. 673, 677, 542 S.E.2d

836, 840 (2000). Accordingly,

"[i]f a highway construction or improvement project results in probable damage to private property without an actual taking thereof and the owners in good faith claim damages, the West Virginia Commissioner of Highways has a statutory duty to institute proceedings in eminent domain within a reasonable time after completion of the work to ascertain the amount of damages, if any, and, if he fails to do so, after reasonable time, mandamus will lie to require the institution of such proceedings." Syllabus point 1, *State ex rel. Rhodes v. West Virginia Department of Highways*, 155 W.Va. 735, 187 S.E.2d 218 (1972).

*Shaffer*, 208 W.Va. at 674, 542 S.E.2d at 837, syl. pt. 2.

We have observed that "the regulation[] [49 C.F.R. § 24.107] governing award of attorneys' and other enumerated fees make[s] no distinction with the method by which a party raises inverse condemnation." *Dodson*, 218 W.Va. at 126, 624 S.E.2d at 473. In *Dodson*, the DOH filed the condemnation action for the purpose of determining just compensation for the acquisition and/or damage to the appellant's property as a result of a highway improvement project that relocated a road through the middle of the tract of land. The appellant's property became two tracts of unequal size, and the smaller parcel, which was less than an acre, was rendered useless for the appellant's business. Because the State offered no compensation for the smaller tract, the appellant filed a counterclaim in the condemnation proceeding, arguing the smaller tract was an "uneconomic remnant" that the State was obligated to purchase. *Id.* at 123, 624 S.E.2d at 470. The case was tried to a jury that rendered a verdict in favor of the appellant, specifically finding the State was required to purchase the smaller tract. At the conclusion of the proceedings, the appellant sought an award of attorney's fees under the Property Acquisition Act. The trial court denied the requested attorney's fees, but this Court reversed the decision on appeal. *Id.* at 123-24, 624 S.E.2d at 470-471.

As in the case sub judice, the DOH argued in *Dodson* that the appellant was not entitled to attorney's fees under the Act because it had filed the condemnation action and

10

the appellant had only raised the inverse condemnation matter by means of a counterclaim.

218 W.Va. at 124, 624 S.E.2d at 471. Rejecting the DOH's argument, this Court explained:

> We believe this interpretation of the applicable law–in effect requiring the landowner to initiate a second action rather than raise a counterclaim–severely discounts the intent of Congress in enacting this legislation, and instead serves to elevate form over substance to reach a preferred outcome. We perceive the intent of Congress to be that a landowner not be required to pay fees for attorney services and other litigation expenses when the landowner, and not the government, has initiated a claim for just compensation and has successfully prosecuted that claim to judgment. That is what happened here.

*Id.* at 125-26, 624 S.E.2d at 472-73. Accordingly, this Court remanded the case for a determination of a reasonable award to reimburse the landowner for "attorney, appraisal and engineering fees actually incurred because of the inverse condemnation proceeding." *Id.* at 127, 624 S.E.2d at 474.

In the case at bar, Ms. Newton filed her petition for a writ of mandamus to require the DOH to institute the condemnation proceeding because that is the only mechanism available to an aggrieved property owner in this state who believes his or her property has been damaged or taken without just compensation. *Shaffer*, 208 W.Va. at 674, 542 S.E.2d at 837, syl. pt. 2.; *see also Orlandi v. Miller*, 192 W.Va. 144, 147, 451 S.E.2d 445, 448 (1994) (acknowledging "an agency of the State of West Virginia may be required by mandamus to institute eminent domain proceedings in order to ascertain just compensation for private land taken or damaged for State highway purposes."). Accordingly,

11

the mandamus and eminent domain proceedings constituted an inverse condemnation action, and under the Act, Ms. Newton is entitled to recover her reasonable attorney's fees resulting therefrom given that she ultimately prevailed and judgment was entered in her favor. As this Court held in *Dodson*,

> Pursuant to the provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies for Federal and Federally Assisted Programs Property Acquisition Act, 42 U.S.C. §§ 4601– 4655 (2000), the event triggering the award of attorneys' fees in a proceeding involving inverse condemnation, as set forth in Title 49, Section 24.107 of the Code of Federal Regulations, is when "[t]he court having jurisdiction renders a judgment in favor of the owner."

218 W.Va. at 122-23, 624 S.E.2d at 469-470, syl. pt. 5.

Notwithstanding the provisions of the Property Acquisition Act, the circuit court found an award of attorney's fees and expenses was warranted for the mandamus action filed by Ms. Newton because the DOH willfully, deliberately, and knowingly failed to exercise its nondiscretionary legal duty to initiate condemnation proceedings against her mineral interest. We have held that "[c]osts and attorney's fees may be awarded in mandamus proceedings involving public officials because citizens should not have to resort to lawsuits to force government officials to perform their legally prescribed nondiscretionary duties." Syl. Pt. 1, *State ex rel. West Virginia Highlands Conservancy, Inc. v. West Virginia Div. of Envtl. Prot.*, 193 W.Va. 650, 458 S.E.2d 88 (1995). Moreover, we have stated: "Where a public official has deliberately and knowingly refused to exercise a clear legal duty,

12

a presumption exists in favor of an award of attorney's fees; unless extraordinary circumstances indicate an award would be inappropriate, attorney's fees will be allowed." *Id.* at 651, 458 S.E.2d at 89, syl. pt. 3.

The DOH's nondiscretionary duty to initiate condemnation proceedings against an owner's property interest arises

> [b]y reason of the language in Section 9 of Article III of our constitution [that] private property cannot be taken or damaged for public use without just compensation. The amount of compensation to be paid to the owner shall be ascertained in such manner as may be prescribed by law. Further, this section of the constitution provides that when required by either of the parties, such compensation shall be ascertained by an impartial jury of twelve freeholders. It is impermissible, therefore, for the state to take or damage private property unless just compensation is paid to the owner. Also, it is incumbent upon the state, or any entity possessing the power of eminent domain, to have the amount of compensation payable to be ascertained in the manner prescribed by law. Procedures, as prescribed by statute, must be followed in the institution and processing of an action in eminent domain.

*State by Dep't of Nat. Resources v. Cooper*, 152 W.Va. 309, 313, 162 S.E.2d 281, 283-84 (1968). West Virginia Code § 54-2-2 (2016) prescribes the procedure to be followed in an eminent domain action and requires that all persons who own an interest in the parcel of land to be taken are required to be made parties to the condemnation proceeding. In accordance therewith, this Court has long held:

> Where the State of West Virginia, or any entity with statutory authority to take property for public use, undertakes to

acquire the fee simple title to a parcel of land all persons who own an interest or an estate in such parcel must be joined as party defendants in the proceeding.

*Cooper*, 152 W.Va. at 309, 162 S.E.2d at 281, syl. pt. 1. It is also well established that "[t]he words 'parcels of land', contained in [West Virginia] Code, 1931, 54-2-2, as amended, includes the surface, timber and underlying minerals, or, as sometimes expressed, a parcel of land includes all interests and estates therein from the center of the earth to the heavens." *Cooper*, 152 W.Va. at 315, 162 W.Va. at 284.

The record shows that the DOH was informed six years before Ms. Newton instituted her mandamus action that the mineral interest rights had been severed from the surface rights of the subject property. Kent Kesecker, the DOH's appraiser, noted this fact in his official appraisal report filed with DOH in 2004. Despite this knowledge,[6] the DOH ignored Ms. Newton's rights as the mineral owner and only contacted Mr. Parsons to obtain access to the property. Having obtained access to the land through payment to Mr. Parsons, the DOH proceeded to trespass upon Ms. Newton's mineral rights and excavate approximately 236,187 tons of limestone from the property which was used to construct the Corridor H highway from 2006 through 2009. *Newton I,* 235 W.Va. at 270, 773 S.E.2d at 374.

---

[6]As previously noted, the DOH stipulated that Ms. Newton's mineral reservation included limestone. *See supra* note 3.

In *Newton I*, we observed that "[u]nder *Cooper*, DOH should have filed a condemnation proceeding jointly against Mr. Parsons and Ms. Newton (and her then [living] spouse). DOH's decision to ignore the rights of the mineral owner in this case, Ms. Newton, has resulted in costs that easily could have been avoided." *Newton I*, 235 W.Va. at 280 n.17, 773 S.E.2d at 384 n.17. While the DOH claims it did not knowingly ignore Ms. Newton's mineral rights, the record proves otherwise. The DOH began testing the soil on parts of the subject property as early as 2003. *Id.* at 270, 773 S.E.2d at 374. After those soil tests revealed significant deposits of limestone under the property, the DOH initiated the process to obtain access to the property. *Id.* To that end, the DOH obtained a copy of Mr. Parsons' deed, which expressly set forth the mineral rights reservation. The circuit court concluded in its final order that "by virtue of the reservation of minerals being made in the same deed from which the WVDOH identified the surface owner and properly instituted condemnation proceedings against the surface, [it] did willfully deliberately, and knowingly refuse to exercise its duty to institute[] condemnation proceedings against [Ms. Newton] for the take of the minerals" and, therefore, Ms. Newton is entitled attorney's fees for the mandamus action pursuant to *Highlands Conservancy*. Having carefully considered and reviewed the record, we cannot conclude that the circuit court's finding was an abuse of discretion.

Likewise, we are unable to find that the circuit court abused its discretion by concluding Ms. Newton is entitled to her attorney's fees and expenses for the condemnation

15

action given that the record shows the DOH acted in bad faith. Long ago, this Court recognized "[t]here is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees as 'costs,' without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Sally-Mike,* 179 W.Va. at 49, 365 S.E.2d at 247, syl. pt. 3. For the purpose of awarding attorney's fees, "'[b]ad faith' may be found in conduct leading to the litigation or in conduct in connection with the litigation." *Id.* at 51, 365 S.E.2d at 249.

The circuit court found the DOH acted in bad faith before the proceedings below were instituted by ignoring Ms. Newton's mineral rights and refusing to exercise its nondiscretionary duty to institute condemnation proceedings for the taking of the limestone. In addition, the circuit court found that the DOH acted in bad faith during the condemnation proceedings by failing to disclose the volume of limestone removed from the property. As the circuit court explained in its order:

> [T]he delay occasioned by WVDOH's refusal [to file a condemnation action] coupled with the commencement of highway construction while WVDOH was trespassing upon the mineral interests placed Respondent Newton at a distinct disadvantage in proving the volume and ultimately the value of her mineral interest. At the time the trial began, the minerals had been removed from her property and used in the Corridor H construction. Respondent Newton had to hire her own experts to reconstruct the topography of the property to estimate the volume of limestone which was removed by WVDOH contractors. WVDOH did not provide topography or volume information in discovery and placed the burden of production

16

upon Respondent Newton to prove how much limestone was removed. This requirement greatly increased litigation costs and expenses.

We have recognized that trial courts are in the best position to gauge the conduct of the parties because they preside over pre-trial issues, as well as the trial itself, and are aware of how the parties and counsel have conducted themselves throughout that process. *Lemasters v. Nationwide Mut. Ins. Co.*, 232 W.Va. 215, 224, 751 S.E.2d 735, 744 (2013). Given the record in this case, we cannot say the circuit court abused its discretion in finding that the DOH acted in bad faith.

Having found Ms. Newton entitled to recover her attorney's fees and costs, the circuit court proceeded to calculate the award based upon an affidavit provided by Ms. Newton's attorney setting forth his time and the nature of the legal services he performed, as well as his expenses. Ms. Newton cross-assigns as error the circuit court's calculation of attorney's fees and expenses based upon her counsel's affidavit. She argues the award should have been based upon the contingency fee contract she has with her attorney providing for payment of one-third of the judgment because it represents the actual attorney's fee paid.

17

While Ms. Newton's contingent fee contract with her attorney is clearly enforceable,[7] it cannot be the sole basis for determining the amount of the attorney's fee award. In syllabus point four of *Aetna Casualty & Surety Company v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986), we explained:

> Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of

---

[7]We have observed that

> none of the rules concerning the award of a "reasonable fee" under a fee shifting statute impairs the right of lawyer and client to make a private fee arrangement. . . . it is perfectly appropriate for lawyer and client to enter into the standard contingency contract. Depending on the terms of the contract, "reasonable attorneys' fees" can either be taken as a credit toward the lawyer's contingent share or they can be added to the gross award and the total sum split–typically two-thirds for the plaintiff and one-third for the lawyer.

*Bishop Coal Co. v. Salyers*, 181 W.Va. 71, 82 n.10, 380 S.E.2d 238, 249 n.10 (1989). "The preferred method in this Court's opinion, and apparently the general trend, is to utilize the former approach where the statutory fee award is used to offset the amount the complainant owes to counsel under the contingency fee award." *Heldreth v. Rahimian*, 219 W.Va. 462, 472 n.16, 637 S.E.2d 359, 369 n.16 (2006).

18

the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Indeed, "[t]he determination of whether fees are reasonable is simply a fact driven question that must be assessed under the *Pitrolo* factors." *Multiplex, Inc. v. Town of Clay*, 231 W.Va. 728, 738, 749 S.E.2d 621, 631 (2013) (internal quotations and citation omitted). As such, "in order for a circuit court to determine those facts, it must allow the parties to present evidence on their own behalf and to test their opponents' evidence by cross-examination[.]" *Id.*

Although the circuit court's final order reflects that a hearing was held on Ms. Newton's motion for an award of attorney's fees and expenses and the *Pitrolo* factors were considered, there is a complete absence of factual findings in the final order to permit a meaningful review of the reasonableness of the amount of attorney's fees and expenses awarded.[8] The DOH contends that the circuit court failed to undertake any real analysis of the *Pitrolo* factors and challenges the documentation submitted by Ms. Newton's attorney to support his request for an attorney's fee award. In particular, the DOH argues that Ms. Newton's attorney's fee request includes time spent working on issues pertaining to her

---

[8]The circuit court's final order simply states that it "reviewed the Affidavit provided by [Ms. Newton's counsel] and finds that the expenses claimed were reasonable and necessary for litigation of this type."

19

former co-plaintiffs;[9] appears to include entries not related to Ms. Newton's case; does not apportion services rendered for Ms. Newton's case as well as other cases; and contains entries for items considered clerical or administrative in nature.  Given these factual questions raised by the DOH as to the accuracy of Ms. Newton's attorney's fees invoice and the complete absence of any findings in the circuit court's final order evidencing an analysis of the fee request under the *Pitrolo* factors, we find that an additional hearing is needed regarding the reasonableness of the attorney's fees and expenses requested by Ms. Newton so that the circuit court can perform the requisite analysis.  *See Heldreth v. Rahimian,* 219 W.Va. 462, 637 S.E.2d 359 (2006) (remanding for hearing because findings relative to fee award failed to comport with *Pitrolo*); *Shafer v. Kings Tire Serv., Inc.*, 215 W.Va. 169. 597 S.E.2d 302 (2004) (remanding for findings demonstrating court engaged in proper balancing of applicable *Pitrolo* factors).  "While [the] court is not required to make detailed findings on each and every element of the *Pitrolo* test, some being irrelevant in a given situation, the court must make findings sufficient to permit meaningful appellate review." *Multiplex*, 231 W.Va. at 739, 749 S.E.2d at 632.  According, we reverse the final order only with respect to the amount of attorney's fees and expenses awarded and remand this case to the circuit court for a *Pitrolo* hearing after which the circuit court shall enter an order containing sufficient findings of fact and conclusions of law with respect to the reasonableness of the amount of

---

[9]The record submitted to this Court does not clearly identify Ms. Newton's former co-plaintiffs, referring to them only as "Sherman and Garrett."

20

attorney's fees and expenses awarded to allow meaningful appellate review should either party elect to file an appeal.

## V. Conclusion

Accordingly, for the reasons set forth above, the final order entered on March 2, 2016, is affirmed, in part, and reversed, in part, and this case is remanded to the circuit court for further proceedings consistent with this opinion.

Affirmed, in part; Reversed, in part; and Remanded.